```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


BLUE RHINO GLOBAL SOURCING,     )
INC.,                           )
                                )
          Plaintiff,            )
                                )
     v.                         )         No. 1:10-cv-490
                                )
WELL TRAVELED IMPORTS, INC.,    )
d/b/a WELL TRAVELED LIVING,     )
                                )
          Defendant.            )
```

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiff Blue Rhino Global Sourcing, Inc. ("Blue Rhino") alleges that Defendant Well Traveled Imports, Inc. ("Well Traveled") is infringing its patent for an outdoor propane heater. (Doc. 1.) Well Traveled denies any infringement and counterclaims on several grounds. Before the court is Blue Rhino's motion for judgment on the pleadings as to two counts of Well Traveled's counterclaim that seek damages under federal and state law for alleged bad faith enforcement of Blue Rhino's patent. (Doc. 11.) Finding that Well Traveled's counterclaims plausibly state a claim for relief, the court will deny the motion.

I.   **BACKGROUND**

The facts alleged in the parties' pleadings, taken in a

light most favorable to Well Traveled as the non-movant, reveal the following:

Blue Rhino and Well Traveled are competitors selling outdoor heating appliances. (Doc. 1 ¶¶ 7-8.) Blue Rhino owns United States Patent Number 6,651,647 ("the '647 Patent"), which describes an invention for an outdoor heating device that embodies a more efficient method of heating its surroundings and has the advantage of being convenient to package and store. Well Traveled's heaters are allegedly manufactured in China by Changzhou Wellife Furnace Co. Ltd. and then imported into the United States. (Id. ¶ 13.)

On June 25, 2010, Blue Rhino commenced this action, alleging (upon information and belief) that Well Traveled is unlawfully offering and selling outdoor heaters nationwide that infringe "one or more" of the fourteen claims of the '647 Patent. (Id. ¶¶ 9-13.) Blue Rhino seeks monetary and injunctive relief as well as its attorneys' fees and costs.

Well Traveled has filed an amended answer and counterclaim that alleges four bases for recovery against Blue Rhino: count I seeks a declaration that the '647 Patent is invalid because its claimed invention was, among other things, "patented or described in a printed publication" more than one year before the patent was issued (Doc. 9 (counterclaim) ¶¶ 13-15); count II seeks a declaration that Well Traveled has not infringed any

2

valid claim of the '647 Patent (id. ¶ 17); count III alleges that Blue Rhino "made statements" to Well Traveled's existing and potential customers that the latter's products infringe the '647 Patent and that the statements were made in bad faith because Blue Rhino "had actual knowledge of prior art that invalidates the claims of the '647 Patent" and sought to "coerce [Well Traveled] into taking a license" (id. ¶ 19-21); and count IV alleges that Blue Rhino's conduct constitutes an unfair and deceptive trade practice under North Carolina law (id. ¶ 23-26). Well Traveled's amended counterclaim incorporates an attached product description for a Sun-Glo patio radiant heater that allegedly constitutes prior art that invalidates claims 1, 2, and 3 of the '647 Patent. (Doc. 9-1; Doc. 9 (counterclaim) ¶¶ 7-9.)

Blue Rhino now challenges counts III and IV of Well Traveled's counterclaim with the present motion for judgment on the pleadings. (Doc. 11.) The motion is fully briefed and is ripe for review.

**II. ANALYSIS**

When evaluating a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), courts apply the same standards as they would when deciding whether a party has sufficiently pleaded a claim to survive a motion to dismiss under Rule 12(b)(6). Mayfield v. Nat'l Ass'n for Stock Car Auto

Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."  While a complaint need not contain detailed factual allegations, it must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  While Iqbal and Twombly involved the allegations of a complaint, courts have applied their pleading standard to counterclaims.  E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011).

Under Rule 12(c), the court, as it would when reviewing a motion pursuant to Rule 12(b)(6), "take[s] the facts in the light most favorable to the [non-moving party]," but "[it] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).  However, the answer and any documents incorporated by reference in the pleadings may be considered.  Mendenhall v. Hanesbrands, Inc., --- F. Supp. 2d ---, ---, No.

4

1:11CV570, 2012 WL 1230743, at *5 (M.D.N.C. Apr. 12, 2012). The "factual allegations of the answer are taken as true, to the extent 'they have not been denied or do not conflict with the complaint.'" Farmer v. Wilson Hous. Auth., 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004). Moreover, Iqbal and Twombly apply as well to motions under Rule 12(c). Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011); Mendenhall, 2012 WL 1230743, at *5. Ultimately, then, the applicable test under Rule 12(c) is whether, "when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472 U.S. 479 (1985); Mendenhall, 2012 WL 1230743, at *5.

A.  **Lanham Act Claim**

Blue Rhino first seeks judgment on the pleadings as to Well Traveled's claim for "Bad Faith Enforcement -- Unfair Competition Under Federal and State Law" (count III). The parties characterize the claim as one for unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125, but Blue Rhino contends that Well Traveled "has not even come close to properly pleading a federal unfair competition claim."[1] (Doc.

---

[1] Count III of the counterclaim is styled as a claim under state law and alludes to "commerce in North Carolina." (Doc. 9 (counterclaim)

5

12 at 5 n.1.)  According to Blue Rhino, the heart of a Lanham Act claim is that the patent-holder act in "bad faith," but the company argues that no facts in the pleadings provide a basis for such an allegation.  In support of its position, Blue Rhino notes that the '647 Patent has never been declared invalid and that "'a patentholder does not compete unfairly by taking steps to enforce his patent until it is determined to be invalid.'" (Id. at 8-9 (quoting GFI, Inc. v. Bean Station Furniture, 286 F. Supp. 2d 663, 666 (M.D.N.C. 2003)).)  In addition, Blue Rhino argues that Well Traveled's sole factual allegation in support of its bad faith claim -- i.e., that Blue Rhino knew that prior art invalidated claims 1, 2, and 3 of the '647 Patent -- is insufficient to make the Lanham Act claim plausible, because the '647 Patent contains eleven other claims.

Well Traveled, in contrast, contends that it has sufficiently pleaded a claim for relief under the Lanham Act. According to Well Traveled, it has alleged facts that make plausible its allegation that prior art invalidates each claim of the '647 Patent.  And, as Well Traveled puts it, where a

---

¶ 22.)  To the extent this claim also seeks recovery for unfair competition under North Carolina common law, "[t]he standard which a plaintiff must meet to recover [for such a claim] . . . is not appreciably different" from a claim under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1. BellSouth Corp. v. White Directory Publishers, Inc., 42 F. Supp. 2d 598, 615 (M.D.N.C. 1999).  Because that is what is alleged in count IV, Well Traveled's state law claims will be addressed in Part II.B.

6

patent-holder "'knows that a patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representation'" is alleged. (Doc. 16 at 10 (quoting Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1353-55 (Fed. Cir. 1999)).) Well Traveled also contests Blue Rhino's reliance on the presumption of a patent's validity; in Well Traveled's view the presumption simply charges it with the burden of demonstrating that Blue Rhino knew of the prior art that would invalidate the claims in the '647 Patent.

Section 43(a) of the Lanham Act creates a civil cause of action for "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To state a claim for relief under the Lanham Act, Well Traveled must plead five elements:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been

7

> or is likely to be injured as a result of the
> misrepresentation, either by direct diversion of sales
> or by a lessening of goodwill associated with its
> products.

<u>PBM Prods., LLC v. Mead Johnson & Co.</u>, 639 F.3d 111, 120 (4th Cir. 2011); <u>see also</u> <u>Zenith Elecs.</u>, 182 F.3d at 1348 (reciting the elements of a Lanham Act claim). To avoid a conflict with patent law, which makes patent-holders responsible for notifying infringers of their violations as a prerequisite to recovering damages, 35 U.S.C. § 287, Well Traveled must also allege that Blue Rhino's statements about the potential infringement were made in "bad faith." <u>Zenith Elecs.</u>, 182 F.3d at 1353.

Blue Rhino contends that Well Traveled has failed to allege sufficient facts to make any element of its section 43(a) claim plausible. According to Blue Rhino, the counterclaim lacks facts alleging that Blue Rhino "used in commerce a false or misleading description or representation of fact which is likely to cause confusion, mistake or deceive." (Doc. 12 at 5 n.1.) Beyond this general statement, however, Blue Rhino fails to address with any specificity the supposed failings of Well Traveled's counterclaim.

The court finds that Blue Rhino's challenge comes up short. Well Traveled's allegation that Blue Rhino made statements that its products infringe the '647 Patent when Blue Rhino "had actual knowledge of prior art that invalidate[d] the [patent's]

8

claims" (Doc. 9 (counterclaim) ¶¶ 19-20) is sufficient to make it plausible that Blue Rhino's statements were false. And although not every misrepresentation implicates the Lanham Act, see Garland Co. v. Ecology Roof Sys. Corp., 895 F. Supp. 274, 279 (D. Kan. 1995), the allegation that Blue Rhino "made statements" to Well Traveled's "potential or existing customers" (Doc. 9 (counterclaim) ¶ 19) makes it plausible that Blue Rhino sufficiently disseminated its statements to a wide enough audience that it could be said to have engaged in the type of "informal . . . 'promotion'" prohibited under the Lanham Act, see Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1384, 1386-87 (5th Cir. 1996) (applying the test for "advertising" or "promotion" first described in Gordon & Breach Science Publishers S.A. v. American Institute of Physics, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994), and concluding that materials given in "individual, face-to-face business meetings" can constitute sufficient dissemination under the Lanham Act). The court can also infer that such false statements were likely to deceive and influence Well Traveled's customers as to their purchasing decisions. See Spotless Enters., Inc. v. Carlisle Plastics, Inc., 56 F. Supp. 2d 274, 278 (E.D.N.Y. 1999) ("It seems clear that, if made, Spotless' false claims and implications that Carlisle's hangers infringe Spotless' patent and, thus, may subject purchasers to suit, or other problems,

9

are as harmful to fair competition and as material to a decision to purchase as [similar and valid] claims [arising in the false comparative advertising context]."). Moreover, a statement made by one competitor to another competitor's customers about the latter's products being sold nationwide occurs within interstate commerce. See Steele v. Bulova Watch Co., 344 U.S. 280, 283-84 (1952) (explaining that the Lanham Act's interstate commerce requirement means "all commerce which may lawfully be regulated by Congress" (citation and internal quotation marks omitted)). Finally, Well Traveled's allegations that Blue Rhino's statements were "made with the intent to injure [Well Traveled's] business" and to "coerce" Well Traveled into taking a license (Doc. 9 (counterclaim) ¶¶ 20-21) make plausible that Well Traveled has suffered or was likely to suffer injury because of Blue Rhino's actions.

As for "bad faith" -- the most hotly contested allegation in the parties' briefing -- the Federal Circuit has held that "what constitutes bad faith [must] . . . be determined on a case by case basis." Zenith Elecs., 182 F.3d at 1354. Blue Rhino raises two principal arguments as to why claims of bad faith against it are precluded.

First, Blue Rhino contends that a patent-holder does not engage in bad faith by attempting to enforce its patent unless its claims of infringement were "objectively baseless," that is

10

that "no reasonable litigant could reasonably expect success on the merits."[2] Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH, 524 F.3d 1254, 1260 (Fed. Cir. 2008); Doc. 12 at 8. It contends that, because patents are presumed to be valid, see 35 U.S.C. § 282, and because the '647 Patent has never been found to be invalid, it could not have been "objectively baseless" for the company to inform others of its rights under the '647 Patent. (Doc. 12 at 8-9.)

Blue Rhino's reliance on the presumption of patent validity and the lack of a prior finding of invalidity is misplaced. It is true that a patent enjoys a presumption of validity. 35

---

[2] Well Traveled argues in a footnote that "[t]here is conflicting authority regarding the applicability of the objectively baseless standard in situations of marketplace communications as at issue here." (Doc. 16 at 10 n.3 (citing Soilworks, LLC v. Midwest Indus. Supply, Inc., 575 F. Supp. 2d 1118, 1126 (D. Ariz. 2008)).) The parameters of any conflict are unclear. Compare CollegeNet, Inc. v. Xap Corp., No. CV-03-1229-HU, 2004 WL 2303506, at *13-14 (D. Or. Oct. 12, 2004) (explaining that proof of "objective baselessness" is required only for "pre-litigation communications" and not "marketplace conduct"), with Dominant, 524 F.3d at 1257, 1261-62 (applying the "objectively baseless" standard to a letter that a patent-holder sent to its "[s]ales and [d]istribution partners" informing them that a named competitor was violating its patents and encouraging the recipients to share the email with their customers), and, MPT, Inc. v. Marathon Labels, Inc., No. 1:04 CV 2357, 2005 WL 2086069, at *5 (N.D. Ohio Aug. 26, 2005) ("Globetrotter expressly discusses and applies Zenith's bad faith test. Nowhere in Globetrotter does the Federal Circuit overrule, vacate, or even question that test. Rather, Globetrotter elaborates on the showing necessary to satisfy Zenith's bad faith test in the context of state common law claims based on pre-litigation communications alleging patent infringement."). However, the court need not resolve whether Well Traveled must allege facts showing "objective baselessness" or "bad faith" because, as is explained below, the company's factual allegations satisfy either standard.

U.S.C. § 282. As Blue Rhino recognizes (Doc. 12 at 8), however, the presumption can be overcome by a showing that the patent-holder acted in bad faith. See Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1336 (Fed. Cir. 1998) ("[F]ederal patent law bars the imposition of liability for publicizing a patent in the marketplace *unless* the plaintiff can show that the patentholder acted in bad faith." (emphasis added)), overruled on other grounds, Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356 (Fed. Cir. 1999) (en banc). Consequently, just because a court has not declared the '647 Patent invalid does not, as a matter of law, preclude a determination that Blue Rhino acted in bad faith in seeking to enforce it. See, e.g., D&R Commc'ns, LLC v. Garrett, Civ. A. No. 11-0413 (GEB), 2011 WL 3329957, at *4 (D.N.J. Aug. 2, 2011) (denying defendants' motion to dismiss plaintiff's unfair competition claim even while the patent's validity remained unresolved); cf. Dow Chem. Co. v. Exxon Corp., 139 F.3d 1470, 1477-79 (Fed. Cir. 1998) (reversing district court and allowing state law unfair competition claim to proceed where there was an allegation of bad faith enforcement of an allegedly invalid patent).[3]

---

[3] Indeed, in Zenith Electronics, the court drew a sharp distinction between Concrete Unlimited, Inc. v. Cementcraft, Inc., 776 F.2d 1537 (Fed. Cir. 1985), which the court characterized as a "good faith enforcement of a patent" because bad faith had not been shown to overcome the presumption of validity, and Dow Chemical, which the court characterized as a "bad faith patent enforcement" because the

12

GFI, supra, upon which Blue Rhino relies heavily, does not require a contrary result. There, the patentee, GFI, had won a federal lawsuit over the validity of its patent in 1996 and thereafter (1996-97) wrote letters to potential infringers and their customers notifying them of the patent and threatening suit to enforce it. GFI then sued alleged infringers in federal court in Mississippi as well as in this district. The federal court in Mississippi held that the patent was invalid because of inequitable conduct based on undisclosed prior art but declined to award attorneys' fees because the court found that GFI's infringement claim was neither frivolous nor brought in bad faith. GFI then dismissed its infringement claims against the defendants in this court, but those defendants moved for summary judgment on their counterclaims of unfair competition under state law based on GFI's 1996-97 communications to defendants and their customers.

The GFI court observed that "a patent is presumed valid until found invalid, and a patentholder does not compete unfairly by taking steps to enforce his patent until it is determined to be invalid." 286 F. Supp. 2d at 666 (emphasis added). However, the court held that GFI could not demonstrate by "clear and convincing evidence that in 1996-97 GFI 'knew'

---

patentee allegedly knew that the patent was unenforceable due to inequitable conduct. Zenith Elecs., 182 F.3d at 1351.

that its patent actually was invalid" in the face of the Massachusetts court's ruling of validity, the Patent Office's affirmation of its patent, and the Mississippi federal court's refusal to find bad faith despite finding inequitable conduct. Id. at 667-68. Thus, the GFI court concluded, no reasonable jury could find that the patent-holder was acting in "bad faith" in seeking to enforce its patent.[4] Id. To the extent GFI relied on the general presumption of patent validity, therefore, it was surplusage to the earlier judicial determination that the patent was valid.

In this case, by contrast, there is no admission or allegation in the amended answer and counterclaim that the '647 Patent has been declared valid. Rather, the only facts alleged are that Blue Rhino sought to enforce the '647 Patent knowing that prior art invalidated its claims. Such an allegation, if true, would state a plausible claim of bad faith. See Zenith Elecs., 182 F.3d at 1354.

Blue Rhino argues secondly that Well Traveled fails to allege sufficient facts to make its bad faith claim plausible because the one instance of prior art specifically identified in the counterclaim is the Sun-Glo patio radiant heater, which is alleged to "meet[] all the limitations of Claims 1, 2[,] and 3

---

[4] This conclusion makes GFI more like Concrete Unlimited than Dow Chemical in that the patent-holder's bad faith was not shown.

14

of the '647 Patent" only. (Doc. 9 (counterclaim) ¶ 9.) Because the '647 Patent contains eleven other claims, Blue Rhino argues, the company could not have acted in bad faith in seeking to enforce its patent. (Doc. 12 at 6-7.) Thus, Blue Rhino takes Well Traveled to task for not identifying specific examples of prior art that allegedly invalidate each of the '647 Patent's fourteen claims.

Yet, a complaint or counterclaim need not contain "detailed factual allegations" to survive a motion to dismiss. Twombly, 550 U.S. at 555. This is true even if "it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Here, Well Traveled has alleged that "all of the purported inventions claimed in the '647 [P]atent were known and used by others" prior to the purported invention in the patent (Doc. 9 (counterclaim) ¶ 10) and that Blue Rhino "had actual knowledge of prior art that invalidates the claims of the '647 Patent" (id. ¶ 20). In support of these allegations, the counterclaim includes alleged factual evidence of the Sun-Glo patio radiant heater which, when viewed in the light most favorable to Well Traveled, is offered as an *example* of prior art. That this specific example of prior art allegedly invalidates some but not all of the claims of the '647 Patent does not doom the

15

counterclaim but makes plausible its allegation that other such prior art exists that invalidates each "purported invention" of the '647 Patent. Accordingly, Well Traveled's counterclaim plausibly alleges that Blue Rhino acted in bad faith by making objectively baseless statements about Well Traveled's products. Zenith Elecs., 182 F.3d at 1354 (finding it "obvious[]" that where a patent-holder "knows that [his] patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out").[5]

Because Well Traveled's amended counterclaim alleges sufficient facts to make each element of its Lanham Act unfair competition claim plausible, therefore, Blue Rhino's motion for judgment on the pleadings as to count III of the counterclaim will be denied.

### B. North Carolina Unfair and Deceptive Trade Practices Act Claim

Blue Rhino also seeks judgment on the pleadings with respect to Well Traveled's "Bad Faith Enforcement -- Unfair and Deceptive Trade Practices Under N.C. Gen. Stat. § 75[-1].1"

---

[5] It is also not lost on the court that while Blue Rhino argues that the counterclaim fails to allege sufficient facts as to every claim of the '647 Patent, the complaint itself does not survive Blue Rhino's own test. The complaint broadly alleges that Well Traveled is infringing "one or more claims" of the '647 Patent and then provides examples of particular claims alleged to be infringed. (Doc. 1 ¶¶ 9-10.) Moreover, most key factual allegations against Well Traveled are made "on information and belief." (Id. ¶¶ 10-13.)

(count IV).  To state a claim for relief under North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA), N.C. Gen. Stat. § 75-1.1, Well Traveled must allege (1) Blue Rhino engaged in an "unfair" or "deceptive" act or practice, (2) the act was in or affecting commerce, and (3) that act injured Well Traveled.  N.C. Gen. Stat. § 75-1.1; Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001).  To avoid preemption under patent law, the state law UDTPA claim must also include an allegation of bad faith.  See Zenith Elecs., 182 F.3d at 1355.

Here, the parties simply adopt the same arguments raised with respect to the Lanham Act claim.  It follows that the court need say little more than that Well Traveled's UDTPA claim survives judgment on the pleadings for the same reasons as the Lanham Act unfair competition claim.  That is, the factual allegations in the counterclaim, including the facts alleging that Blue Rhino acted in bad faith, are sufficient to make Well Traveled's claim for relief plausible.  Accordingly, Blue Rhino's motion for judgment on the pleadings as to Well Traveled's UDTPA claim contained in count IV of the counterclaim will be denied.

**III. CONCLUSION**

For the reasons set forth herein, therefore,

IT IS ORDERED that Blue Rhino's Motion for Judgment on the Pleadings (Doc. 11) with respect to counts III and IV of Well Traveled's amended counterclaim (Doc. 9) is DENIED.

                                              /s/   Thomas D. Schroeder
                                        United States District Judge

August 22, 2012